[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 39 (d.o.b. 5/5/62) and the defendant wife, 40 (3/30/62) married on October 5, 1991 in Haworth, New Jersey. They have two children, Reyna born February 10, 1993 and Mira born September 11, 1996. They have agreed to joint legal custody with primary residence with the mother and for reasonable visitation by the father. Both parties and both children all enjoy good health. Both are college graduates. The CT Page 4809 court has jurisdiction based on the continuous residence of the plaintiff in Connecticut for well over one year prior to the commencement of this action for dissolution of the marriage.
The plaintiff is a management consultant employed by Price Waterhouse Coopers for about 16 years except for six months in 1995. He has an MBA from Cornell University received in 1985. When married he was a permanent resident with a green card. He is now a U.S. citizen. At that time he had no assets but was enjoying an annual income of $71,000. Effective July 1, 1993 the plaintiff was promoted and his income increased to $105,000. That same year they moved to Darien, Connecticut purchasing 18 Silver Lakes Drive for $350,000 puffing $35,000 down. In 1998 they launched a major reconstruction of their house costing $650,000. It was financed by bank borrowings and their incomes. In 1998 the plaintiff's income had advanced to about $350,000.
The plaintiff became a principal of the firm in 1997 which greatly augmented his income. He was not made a "partner" since he is not a C.P.A. (Plaintiff's Exhibit #2). His compensation is determined by three factors, "responsibility, performance and equity" as explained in the Price Waterhouse Coopers LLP memo to plaintiff dated November 2, 2001. Plaintiff's former firm, Price Waterhouse and Coopers Lybrand merged in 2001.
The plaintiff was assigned a target income for fiscal year 2002 of $610,056 consisting of:
 "Responsibility Income $362,378 Performance Income 128,982 Equity Unit Income 118,696"
Some of his income is paid into his capital account and his deferred compensation. Many deductions are made from his gross income. His financial affidavit dated November 20, 2001 on file, lists $40,630.83 gross and net monthly of $21,668.19. The plaintiff received $496,000 in hand for the period November 2000 to November 28, 2001 including tax refunds of $4,100 received from state income taxes overpaid. From this income he paid I.R.S. taxes of $181,000 and $28,800 for state taxes. The court cannot base an order of alimony or child support on target earnings which are future projections which may or may not be accurate.
The defendant was employed by Michael Whittaker, Inc., throughout the marriage, taking time off after each child was born, sometimes working three or four days. The older child was cared for by a nanny for a year and day care was then utilized. For substantial periods of time various relatives lived with the parties and assisted. From November, 1996 until CT Page 4810 this action was begun the defendant worked substantially on a full time basis. Her affidavit dated November 20, 2001 lists gross weekly wages of $642.50 and net of $359.27. However, the court finds that she had earned $50,917 in 1999 and the court concludes that figure establishes her earning capacity.
The parties' marriage began to experience difficulty in 1997. However, they carried on as a family as evidenced by a trip taken to India in January, 2000. The plaintiff returned to the USA after 12 days. On March 5, 2000 the plaintiff told the defendant that he wanted a divorce, admitting to her that he was in love with another woman. The court finds plaintiff's affair de coeur to be the primary cause of the marriage breakdown. The initial separation took place in April 2000, lasting four weeks. The final separation occurred on June 18, 2000 when the plaintiff moved out
The plaintiff values the marital home at $1,500,000 while the defendant lists $1,300,000 as its fair market value. The premises are subject to a first mortgage of $710,023. No expert testimony was offered on the issue nor was either party examined regarding said owner's opinion. The court splits the difference and defines the value to $1,400,000.
Having reviewed the evidence in light of relevant statutory and case law, the court enters the following decree:
 1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown. Both parties are declared unmarried.
 2. Joint legal custody of the minor children is ordered with primary residence with their mother. Their father shall have reasonable visitation as follows:
 (a) The first weekend of each month commencing Friday at 6:30 p.m. and terminating Sunday at 8 p.m.
 (b) The second weekend of each month commencing Sunday at noon and terminating Sunday at 8:30 p.m.
(c) The third weekend of each month shall commence Friday at 6:30 p.m. and terminate Sunday at 10:30 a.m. by returning the children to Sunday school or to the wife's residence at 10:30 CT Page 4811 a.m. if there is no Sunday school.
 (d) The fourth weekend of each month shall be the wife's exclusive weekend.
 (e) Each Wednesday evening from 6:30 p.m. to 8:30 p.m.
 The parties shall agree on a division of holidays and winter and spring school vacations.
 3. The plaintiff shall pay unallocated alimony and child support to the plaintiff of $12,500 monthly until the death of either party, the remarriage of the defendant, the cohabitation of the wife as defined by § 46b-86 and relevant case law or June 30, 2012. The amount ordered is modifiable but the termination date of June 30, 2012 is not modifiable under any circumstances. A wage withholding order is entered.
 4. The defendant is awarded the plaintiff's interest in the marital home and its contents, known as 18 Silver Lakes Lane, Darien, CT. The defendant shall assume the mortgage balance and hold the plaintiff harmless and indemnified from any claim related to the property.
 5. The parties shall equally divide the Bernard Herold and Co. investment account.
 6. The plaintiff shall retain as his sole property all of his Price Waterhouse Coopers accounts.
 7. The defendant shall retain her Michael Werdiger, Inc., deferred compensation account and her 401 (k) account.
8. The plaintiff shall maintain all medical insurance coverage available from his employer for the children and he shall pay any uninsured bill balances. § 46b-84 (e) applies to this order. The plaintiff shall cooperate if the defendant is eligible for and elects COBRA coverage for herself. CT Page 4812
 9. The parties shall terminate the Northwest Mutual Life Insurance policy and equally divide the cash surrender value. The husband shall name the wife beneficiary of 1.5 million dollars of life insurance currently provided by his employer until her death, or the younger child's 18th
birthday.
 In the event of the wife's death, cohabitation or remarriage, the husband shall name the children equal beneficiaries of the 1.5 million dollar insurance policy.
 10. Each party is awarded sole ownership of the auto currently used. The plaintiff shall continue to be responsible for the monthly lease payments due on defendant's vehicle and he shall be solely responsible for the buyout of the vehicle so it can be possessed by the defendant free of lien.
 11. Each party shall be responsible for the liabilities each has listed on the respective affidavits each party filed.
 12. The plaintiff shall retain membership in Burning Tree Country Club free of any claim of the defendant.
 13. The arrears found owing by court order of June 26, 2001 shall be paid in three equal installments of $15,000 on December 31, 2002, July 1, 2003 and December 31, 2003, without interest. Any arrears accrued subsequent to the trial is to be determined by further hearing, but the pendente orders are not merged.
14. No counsel fees are awarded to either party.
So Ordered.
HARRIGAN. J.T.R.